IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE KIM,<br><br>    Plaintiff,<br><br>    vs.<br><br>COACH, INC., a Foreign Profit Corporation,<br><br>    Defendant. | Civil No. 14-00574 HG-RLP |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 23)**

Plaintiff Catherine Kim filed a Complaint alleging claims of intentional infliction of emotional distress and retaliation in violation of Title VII of the Civil Rights Act of 1964 against her former employer, Coach, Inc.

Defendant moved for summary judgment as to each of Plaintiff's claims.

Plaintiff abandoned her claims of intentional infliction of emotional distress and unwarranted discipline.

Plaintiff opposes summary judgment on her claim alleging retaliation by means of a reduction in work hours.

Plaintiff failed to establish a *prima facie* case of retaliation.

1

Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

## PROCEDURAL HISTORY

On April 21, 2014, Plaintiff Catherine Kim ("Plaintiff") filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Ex. N of Def. CSF, ECF No. 24-19).

On September 25, 2014, the EEOC issued a Dismissal and Notice of Rights form to Plaintiff. (Ex. O of Def. CSF, ECF No. 24-20).

On December 22, 2014, Plaintiff timely filed a Complaint against Defendant. (ECF No. 1).

On February 24, 2015, Plaintiff filed an Amended Complaint against Defendant. (ECF No. 7).

On November 12, 2015, Defendant filed a Motion for Summary Judgment, along with a concise statement of facts in support. (ECF Nos. 23; 24).

On December 7, 2015, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment, along with a concise statement of facts in opposition. (ECF Nos. 26; 27).

On January 7, 2016, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. (ECF No. 28).

On February 1, 2016, the Court held a hearing on Defendant's Motion for Summary Judgment. (ECF No. 29).

## **BACKGROUND**

**Plaintiff's Employment with Defendant**

On September 24, 2006, Plaintiff Catherine Kim ("Plantiff") began her employment with Defendant Coach, Inc. ("Defendant") as a sales associate in Honolulu. (Hazlett Decl. at ¶4, ECF No. 24-2). From April 2009 until September 2013, Plaintiff worked at Defendant's Ala Moana retail store. (Def. CSF at No. 1).

During the entire time in which Plaintiff worked at Defendant's Ala Moana store, Trisha Makiya ("Makiya") was the general manager of that store. (Makiya Decl. at ¶1, ECF No. 24-3). As Plaintiff's general manager, Makiya was responsible for determining the number of hours Plaintiff worked. (Id. at ¶2).

**Determination of Work Hours at Defendant's Ala Moana Store**

According to Defendant, the number of hours an employee works at the Ala Moana store generally depends on the store's monthly payroll budget, the employee's part-time or full-time classification, and the needs of the store. (Makiya Decl. at ¶¶3-5, ECF No. 24-3). Defendant states that the combination of factors generally results in a week-by-week fluctuation in the number of hours a particular employee works. (Id. at ¶4). As

general manager, Makiya is also able to adjust a particular employee's hours during their shift.  An employee's hours may therefore be modified or eliminated on a monthly, weekly, daily, and hourly basis.  (Id.)

**Plaintiff's First Charge of Discrimination**

On August 20, 2012, Plaintiff filed a charge of discrimination ("First Charge") with the Hawaii Civil Rights Commission ("HCRC") and the United States Equal Employment Opportunity Commission ("EEOC").  (Ex. J of Def. CSF, ECF No. 24-15).  The First Charge alleged claims of race and sex discrimination, and sexual harassment, against Defendant.  (Id.)

The HCRC and EEOC dismissed Plaintiff's First Charge, which allowed her to file a lawsuit in federal or state court.  (Ex. Q of Def. CSF, ECF No. 24-22; Ex. R of Def. CSF, ECF No. 24-23).

**Plaintiff's First Lawsuit**

On February 21, 2013, Plaintiff filed a state-court lawsuit against Defendant (the "First Lawsuit").  (Ex. G of Def. CSF, ECF No. 24-12).

**Plaintiff's Work Hours**

Beginning on April 1, 2013, Plaintiff's average work hours declined.  (Def. CSF at Nos. 32; 34, ECF No. 24).  In the period

between October 14, 2012 and March 30, 2013, Plaintiff was paid for an average of 26.95 hours per week.  (Id. at No. 32).  In the period between April 1, 2013 and September 14, 2013, Plaintiff was paid for an average of 22.57 hours per week.  (Id. at No. 34).

**Defendant's Knowledge of Plaintiff's First Lawsuit**

On May 22, 2013, Plaintiff served Defendant with notice of the First Lawsuit.  (Ex. II of Def. Reply, ECF No. 28-2).  The next day, Defendant's legal department informed the senior manager for employee relations, Katrina Hazlett ("Hazlett"), of the First Lawsuit.  (Hazlett Second Decl. at ¶2, Def. Reply, ECF No. 28-4).  On May 28, 2013, Hazlett notified Makiya of Plaintiff's First Lawsuit.  (Id.)

On June 5, 2013, Defendant removed Plaintiff's First Lawsuit to the United States District Court for the District of Hawaii.  See Kim v. Coach, Inc., 13-cv-00285-DKW-RLP.

**Plaintiff's End of Employment with Defendant**

On September 13, 2013, Plaintiff resigned from employment with Defendant.  (Pla. Opp. at p. 4, ECF No. 27).  Plaintiff states she resigned because she wanted to work more hours than she was able to obtain with Defendant.  (Id.)

5

**Plaintiff's Second Charge**

On April 21, 2014, Plaintiff filed another charge of discrimination with the EEOC (the "Second Charge").  (Ex. N of Def. CSF, ECF No. 24-19).  The Second Charge alleged that from April 1, 2013 to September 16, 2013, Defendant retaliated against Plaintiff by reducing her hours. (Id.)  The Second Charge also stated that Makiya "would write [Plaintiff] up and state that [Plaintiff] was doing things wrong," and that Plaintiff "was constantly getting disciplined." (Id.)

**Judgment in Plaintiff's First Lawsuit**

On May 30, 2014, the District Court Judge hearing Plaintiff's First Lawsuit ordered summary judgment against Plaintiff.  (Ex. K of Def. CSF, ECF No. 24-6).

**Plaintiff's Second Lawsuit**

On September 25, 2014, the EEOC dismissed Plaintiff's Second Charge and authorized her to sue Defendant in federal or state court.  (Ex. O of Def. CSF, ECF No. 24-20).

On December 22, 2014, Plaintiff filed the case before the Court in the United States District Court for the District of Hawaii ("Second Lawsuit").  (ECF No. 1).

## **STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

The party seeking summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support

the nonmovant's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose

summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

### I. Plaintiff has Abandoned Her Intentional Infliction of Emotional Distress Claim

On February 24, 2015, Plaintiff Catherine Kim ("Plaintiff") filed an Amended Complaint.  (ECF No. 7).  Count I in the Amended Complaint alleges a claim for intentional infliction of emotional distress.

On November 12, 2015,  Defendant Coach, Inc. ("Defendant") filed a Motion for Summary Judgment as to each of the claims in Plaintiff's Amended Complaint.  (ECF No. 23).

In her Opposition, Plaintiff did not respond to Defendant's Motion for Summary Judgment as to her intentional infliction of emotional distress claim.  (See Pla. Opp., ECF No. 27).

A party abandons an issue when she has had a "full and fair opportunity" to express her views on that issue, but does not address it in her opposition to the opposing party's motion for summary judgment.  Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009) (internal quotations and citations omitted); Jenkins v. Cnty. of Riverside, 398 F.3d 1093, 1095 n. 4 (9th Cir.

9

2005).  Once an abandonment has occurred, the party generally may not revisit them.  Ramirez, 560 F.3d at 1026.

The Court finds that Plaintiff has abandoned her intentional infliction of emotional distress claim.

Defendant's Motion for Summary Judgment as to Count I for intentional infliction of emotional distress is **GRANTED**.


**II. Plaintiff's Title VII Claims**

On February 21, 2013, Plaintiff filed a lawsuit against Defendant that brought claims of employment discrimination (the "First Lawsuit").  In the case before the Court here, Plaintiff alleges that after she filed her First Lawsuit, Defendant retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*.  Specifically, Plaintiff states that Defendant reduced her work hours from April 1, 2013, until September 13, 2013, the date she resigned.  (Pla. Opp at p. 4, ECF No. 27).


**A. Plaintiff has Abandoned Two of Her Title VII Retaliation Allegations That are Styled as Claims**

In addition to the reduction in hours claim, Plaintiff's Amended Complaint also alleges acts of unwarranted discipline. First, Plaintiff states that the general manager of Defendant's Ala Moana store, Trisha Makiya ("Makiya"), "would write Plaintiff

up and state that Plaintiff was doing things wrong." (Amended Complaint at ¶11, ECF No. 7). Second, Plaintiff contends that she "was constantly getting disciplined since the filing of the lawsuit." (Id. at ¶12).

Defendant's Motion for Summary Judgment characterizes the unwarranted discipline Plaintiff complains of as "feedback" that occurred on "several occasions." (Def. MSJ at pp. 2; 8, ECF No. 23-1). Exhibits DD, EE, FF, GG, and HH demonstrate that there were periods of time in which Plaintiff routinely received critical remarks about her work, which Plaintiff described as discipline. (See Exs. DD; EE; FF; GG; HH of Def. CSF, ECF Nos. 24-35; -36; -37; -38; -39).

In February 2012, Defendant issued a first "Corrective Action Notice" to Plaintiff for ignoring a supervisor. (Ex. DD of Def. CSF, ECF No. 24-35). In March, April, and May 2012, Plaintiff's supervisors "had several conversations" with her about various performance deficiencies, such as failing to engage with customers or consistently achieving sales goals. (Ex. EE, ECF No. 24-36). In August 2012, Defendant issued a second "Corrective Action Notice" to Plaintiff for unprofessional behavior. (Ex. FF, ECF No. 24-37). Defendant also issued a "Midpoint Check-in," which criticized Plaintiff's work performance for the months of June, July, and August of 2012. (Ex. GG, ECF No. 24-38). In May 2013, Defendant provided a third

"Corrective Action Notice" to Plaintiff for poor customer service.  (Ex. HH, ECF No. 24-39).

The criticisms that occurred in 2012 and 2013 are barred by the statute of limitations.  Plaintiff's Opposition did not respond to Defendant's Motion for Summary Judgment as to her allegations of unwarranted discipline.  (See Pla. Opp., ECF No. 27).  Plaintiff has therefore abandoned these claims.  See Ramirez, 560 F.3d at 1026; Jenkins, 398 F.3d at 1095 n. 4.  The Court will only consider Plaintiff's claim that Defendant retaliated against her when it reduced her work hours.

### B. Title VII's Timeliness Requirement

Defendant argues that Plaintiff's reduction in hours claim should be dismissed, as her April 21, 2014 charge of discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC") was filed more than 300 days after April 1, 2013, the date which Plaintiff alleges Defendant began retaliating against her.

A plaintiff seeking redress for a Title VII claim in federal court must first exhaust her administrative remedies by filing a timely Charge with the EEOC.  42 U.S.C. § 2000e-5(b); Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  A Charge is considered "filed" when the EEOC receives it.  Sanchez v. Pac. Powder Co., 147 F.3d 1097,

1099 (9th Cir. 1998).  Failure to file a timely Charge generally renders a court without subject matter jurisdiction to adjudicate those claims which fall outside the relevant filing deadline.  <u>Vasquez</u>, 349 F.3d at 644.

Title VII generally requires a plaintiff to file a Charge with the EEOC within 180 days after the alleged unlawful practice occurred.  42 U.S.C. § 2000e-5(e)(1).  The limitations period is extended to 300 days if the plaintiff files a charge with "a State or local agency with authority to grant or seek relief from such practice."  <u>Id.</u>

Plaintiff filed her Charge with the EEOC. (Ex. N of Def. CSF, ECF No. 24-19).  In Hawaii, filing a Charge with the EEOC is functionally equivalent to filing the same Charge with the Hawaii Civil Rights Commission ("HCRC").  <u>U.S. E.E.O.C. v. NCL Am. Inc.</u>, 504 F.Supp.2d 1008, 1010 (D. Haw. 2007) ("It is also undisputed that Hawaii is a 'worksharing' state such that administrative claims with the EEOC are deemed 'dual-filed' with the [HCRC] (or vice-versa)").  The HCRC is a state agency "with authority to grant or seek relief" from practices of employment discrimination.  <u>See</u> Haw. Rev. Stat. §368-3(1).  The 300-day filing deadline therefore applied to Plaintiff's claims.

The EEOC received Plaintiff's Charge on April 21, 2014. (Ex. N of Def. CSF, ECF No. 24-19).  Subtracting 300 days from April 21, 2014 yields a date of June 25, 2013.

Plaintiff alleges that Defendant began retaliating against her from April 1, 2013 until she quit on September 13, 2013.

### 1. The Continuing Violation Doctrine

In situations where a plaintiff alleges that her employer took discrete acts of retaliation against her, the date in which her Charge is filed is especially important, as "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Where, as here, a Plaintiff alleges continuing retaliatory conduct, claims outside the limitations period which relate to claims within the limitations period may nonetheless be actionable under the continuing violation doctrine. Gonzalez v. Nat'l R.R. Passenger Corp., 376 F. App'x 744, 746 (9th Cir. 2010).

To successfully apply the continuing violation doctrine, a plaintiff must allege that the untimely incidents were:

> (1) the untimely incidents were part of an ongoing pattern of retaliation; and
>
> (2) the defendant continued the pattern of retaliation into the limitations period that is timely.

Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990); Bauer v. Bd. of Supervisors, 44 F. App'x 194, 198 (9th Cir. 2002).

### a. Ongoing Pattern of Retaliation

Plaintiff asserts that from April 1, 2013 to September 13, 2013, Defendant reduced her work hours in retaliation for her First Lawsuit against Defendant. (Pla. Opp at p. 4, ECF No. 27).

The alleged reduction in hours that Plaintiff describes could possibly be seen as a continuous act. Makiya states that decisions on how many hours a particular employee works are made on a monthly, weekly, daily, and even hourly basis. (Makiya Decl. at ¶4, ECF No. 24-3). According to Makiya, "it is common for the number of hours an employee, including a sales associate, [who] works at Coach's Ala Moana store to fluctuate from week to week. In addition, in the past when the store has been slow on a particular day, I have asked some employees not to stay as late at work." (Id.) A decision as to the number of hours Plaintiff worked was therefore decided on a recurring basis. The fact that Plaintiff is alleging, and Defendant does not dispute, that her work hours were reduced over a period of five and a half months shows a pattern of decisions that were not made in isolation. See Knox v. City of Portland, 543 F.Supp.2d 1238, 1246 (D. Or. 2008) (finding that "conduct spanning several years and involving mostly the same actors" qualified as a continuing violation).

### b. The Pattern Continued into Relevant Period

15

The 300-day limitation in this case ended on June 25, 2013. Plaintiff contends a continuous reduction in work hours from April 1, 2013 until September 13, 2013.  Plaintiff has therefore alleged that Defendant continued the pattern of reducing her hours into the limitations period that is timely.  Sosa, 920 F.2d at 1456.

Plaintiff has alleged that from April 1, 2013 to September 13, 2013, she was subject to an ongoing and continuous pattern of retaliation.  The Court has subject matter jurisdiction over the entire duration if the continuing violation doctrine applies.

### C. Unlawful Retaliation Pursuant to Title VII

Title VII prohibits employers from retaliating against employees who have "opposed, complained of, or sought remedies for, unlawful workplace discrimination." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2522 (2013); 42 U.S.C. §2000e-3(a).  Courts analyze Title VII retaliation cases by applying the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011).

Under the McDonnell Douglas framework, the plaintiff is first required to establish a *prima facie* case of retaliation. Id.  If the plaintiff successfully establishes a *prima facie*

16

case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions.  Id.  If the employer satisfies its burden of showing a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for impermissible discrimination.  Id.

### Prima Facie Case of Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that:

(1)  She engaged in a protected activity;

(2)  Defendant was aware that she had engaged in a protected activity;

(3)  Defendant subjected her to an adverse employment action; and

(4)  a causal link existed between the protected activity and the adverse employment action.

Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).

### (1) Engagement in Protected Activity

Plaintiff claims the reduction in the hours she was allowed to work was retaliation for the filing of the First Lawsuit on

February 21, 2013.  The First Lawsuit alleged various employment discrimination claims pursuant to federal and state law.  (Ex. G of Def. CSF, ECF No. 24-12).

The filing of an employment discrimination lawsuit constitutes protected activity under Title VII.  42 U.S.C. §2000e-3(a); Davis v. Team Elec. Co., 520 F.3d 1080, 1094 (9th Cir. 2008).

### (2) Knowledge of Plaintiff's Protected Activity

A prima facie case of retaliation can only exist if the defendant was aware that the plaintiff had engaged in protected activity.  Thomas v. City of Beaverton, 379 F.3d 802, 812 n. 4 (9th Cir. 2004); Raad, 323 F.3d at 1197.

Plaintiff filed her first charge of discrimination with the EEOC on August 20, 2012.  (Ex. J of Def. CSF, ECF No. 24-15). After she received the EEOC's notice of dismissal, she filed her First Lawsuit against Defendant on February 21, 2013.  (Ex. G of Def. CSF, ECF No. 24-12).  Defendant was not served notice of the First Lawsuit until May 22, 2013. (Ex. II of Def. Reply, ECF No. 28-2).  The next day, May 23, 2013, Defendant's legal department informed the senior manager for employee relations of the First Lawsuit.  (Hazlett Second Decl. at ¶2, Def. Reply, ECF No. 28-4). On May 28, 2013, the senior manager notified Makiya of Plaintiff's First Lawsuit.  (Id.)  Makiya was responsible for

scheduling all employees' hours at Defendant's Ala Moana store. (Makiya Decl. at ¶2, ECF No. 24-3).

Defendant presented evidence that Makiya only learned of Plaintiff's First Lawsuit almost two months after April 1, 2013, the date in which Plaintiff states Defendant began retaliating against her.  Plaintiff has presented no evidence establishing that either Makiya or Defendant had actual knowledge of the First Lawsuit at any earlier date.  Cf. McDaniels v. Mobil Oil Corp., 527 F. App'x 615, 617 (9th Cir. 2013).  The gap in time between the start of Plaintiff's reduction in work hours and Defendant's awareness of the First Lawsuit is fatal to Plaintiff's claim that Defendant retaliated against her because she filed the First Lawsuit.  Brooks v. Capistrano Unified Sch. Dist., 1 F.Supp.3d 1029, 1037 (C.D. Cal. 2014) (observing that "[i]n general, if the decision maker does not have knowledge of the plaintiff's protected activity, there can be no retaliation for engaging in that activity").

Plaintiff failed to show that Defendant knew of the First Lawsuit when it reduced her work hours.  It is not necessary to reach the remaining requirements for a *prima facie* case.  Without knowledge of the protected act by the employer, no *prima facie* case of retaliation can exist.  Raad, 323 F.3d at 1197 (requiring a plaintiff to demonstrate all four aspects of a *prima facie* case).

Defendant is **GRANTED** summary judgment.

## CONCLUSION

Plaintiff abandoned her claims of intentional infliction of emotional distress and unwarranted discipline.

Plaintiff failed to establish a *prima facie* case of retaliation, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*.

Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED.**

IT IS SO ORDERED.

DATED:   February 9, 2016, Honolulu, Hawaii.



/s/ Helen Gillmor

Helen Gillmor
United States District Judge

Catherine Kim v. Coach, Inc.; Civ. No. 14-00574 HG-RLP; **ORDER GRANTING DEFENDANT COACH, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 23)**